UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ROBERT ROLDAN,                                   :
                                                 :
                           Plaintiff,            :
                                                 :          **OPINION & ORDER**
                -against-                         :          16-CV-2364 (DLI)(PK)
                                                 :
SECOND DEVELOPMENT SERVICES, INC.;               :
SDS BROOKLYN, INC., and any companies            :
affiliated with or controlled by SECOND          :
DEVELOPMENT SERVICES, INC.; SDS                  :
BROOKLYN, LLC, and LOUIS V. GRECO, JR.;          :
LINDA E. GRECO, and LOUIS V. GRECO III,          :
individually,                                    :
                                                 :
                           Defendants.           :
-------------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

        Plaintiff Robert Roldan ("Plaintiff") instituted this action on May 10, 2016 against Second

Development Services, Inc. ("Second Development") and SDS Brooklyn, Inc. ("SDS")[1] (together,

the "Corporate Defendants"); and Louis V. Greco, Jr.; Linda E. Greco; and Louis V. Greco III (the

"Individual Defendants," and together with the Corporate Defendants, "Defendants"), alleging

breach of contract, unpaid wages under the New York Labor Law ("NYLL"), and violations of the

NYLL annual wage notice requirements.  *See* Complaint, Dkt. Entry No. 1, at ¶¶ 55-79.

Defendants moved to dismiss the Complaint pursuant to Rules 12(b)(6) and (7) of the Federal

Rules of Civil Procedure ("FRCP") for failure to state a claim and nonjoinder of necessary parties.

*See generally* Mem. of Law in Support of Defs.' Mot. to Dismiss, Dkt. Entry No. 21.  In opposing

Defendants' motion, Plaintiff withdrew his breach of contract claim against the Individual

---

[1]        While the caption refers to "SDS Brooklyn, Inc.", the body of the Complaint and the First Amended
Complaint refer to "SDS Brooklyn, LLC."  *See* Complaint, Dkt. Entry No. 1, at ¶ 3; First Amended Complaint
("FAC"), Dkt. Entry No. 30, at ¶ 3.  This Court has subject matter jurisdiction based on 28 U.S.C. § 1332.  *See Id.* at
¶¶ 2-8.

Defendants and his wage notice claim, clarified the period in which he was seeking unpaid statutory wages under the NYLL, and sought leave to file an amended Complaint. *See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Dkt. Entry No. 25, at 1 n.1, 6, 9. The Court referred Defendants' motion to the Honorable Peggy Kuo, U.S.M.J., for a report and recommendation ("R & R").

On February 28, 2017, the magistrate judge issued her R & R, recommending that the Court grant in part and deny in part Defendants' motion to dismiss. *Roldan v. Second Dev. Servs., Inc.*, 2017 U.S. Dist. LEXIS 29135 (E.D.N.Y. Feb. 28, 2017), *R & R adopted by* 2017 U.S. Dist. LEXIS 43980 (E.D.N.Y. Mar. 22, 2017). Specifically, the magistrate judge recommended denying Defendants' motion to dismiss for nonjoinder of RSL Consulting, LLC ("RSL") and RJM Consulting, Inc. ("RJM")[2], since Defendants had not sufficiently demonstrated that either entity was necessary or that their interests would be prejudiced by their absence. *Id.* at *14. The magistrate judge recommended that the Court dismiss Plaintiff's breach of contract claim against Second Development since Second Development was not a signatory to the employment agreement and Plaintiff had failed to allege sufficient facts to establish that Second Development was the alter ego of signatory SDS. *Id.* at *20-21. The magistrate judge also recommended that the Court grant Plaintiff leave to amend his complaint to add "more detailed facts that would support extending liability for alleged breach of the Agreement to Second Development." *Id.* at *22. No party objected to the R & R, and the Court adopted it in full.

Plaintiff filed the FAC on April 21, 2017. The FAC alleges that the Corporate Defendants breached a 2008 oral agreement to pay back wages (the "2008 Agreement") and a 2015 employment agreement (the "2015 Agreement"); Defendants breached NYLL §§ 191 and 198 by

---

[2]     Plaintiff consulted for RSL and RJM, and those entities contracted with the Corporate Defendants. *Roldan*, 2017 U.S. Dist. LEXIS 29135, at *6-7, 12.

failing to pay Plaintiff at least semi-monthly; and failed to reimburse him for educational expenses for a class at Rutgers University, the cost of his health insurance coverage, and phone expenses. *See generally*, FAC.

On May 26, 2017, Defendants moved to dismiss the breach of contract claim in its entirety on the grounds that Plaintiff failed to join necessary parties, and, alternatively, to dismiss the breach of contract claims against Second Development, with respect to the 2015 Agreement, and against SDS, with respect to the 2008 Agreement. *See* Defs.' Mem. of Law in Support of Mot. to Dismiss FAC ("Defs.' Mem."), Dkt. Entry No. 36; Defs.' Reply Mem. of Law ("Reply"), Dkt. Entry No. 42. Plaintiff opposed Defendants' Motion. *See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), Dkt. Entry No. 39. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

This action arises out of two agreements to pay back wages to Plaintiff. Plaintiff worked for Defendants from approximately 2008 until April 2016 performing account analyses for Defendants' clients. FAC at ¶¶ 2, 10-14. During that period, Plaintiff did not have the power to issue checks on behalf of Defendants, hire or fire employees, and did not make managerial or administrative decisions. *Id.* at ¶¶ 17-19. The Individual Defendants supervised Plaintiff, and both Corporate Defendants employed and paid him over various relevant periods. *Id.* at ¶¶ 15-16.

When Second Development initially hired Plaintiff in 2008, his salary was $152,000.00 per year. *Id.* at ¶ 20. In approximately November 2008, Louis V. Greco, Jr. told Plaintiff that "Defendants" could not pay him his full salary and, instead, would pay a portion of his salary and defer payment of the remaining amount "to a time when they had the money." *Id.* at ¶ 21. The

parties refer to this as the 2008 Agreement.  From approximately November 2008 through September 2011, Plaintiff received $1,000 per week, deferring $1,938.08 each week.[3]  *Id.* at ¶ 22.

In early 2011, Defendants formed SDS.  *Id.* at ¶ 11.  Plaintiff alleges that SDS "adopted" the 2008 Agreement between Second Development and Plaintiff.  *Id.* at ¶ 64.

In September 2011, Louis V. Greco, Jr. reduced Plaintiff's salary to $104,000 per year.  *Id.* at ¶ 23.  Even with this reduction, Defendants were unable to pay Plaintiff's entire salary.  *Id.* at ¶ 24.  From approximately September 2011 through the end of February 2015, Plaintiff received either $560 or $1,000 per week, with Defendants deferring either $1,000 or $1,440 in salary each week.  *Id.* at ¶ 25.

In March 2015, Defendants increased Plaintiff's salary to $152,000 per year, or $2,923.08 per week.  *Id.* at ¶ 26.  At that time, Defendants began paying Plaintiff an additional $1,000 per week of previously deferred compensation.  *Id.* at ¶ 27.  Defendants paid Plaintiff his salary and the additional $1,000 in deferred compensation for approximately six months from March through August 2015.  *Id.* at ¶ 28.  In September 2015, the Defendants reduced Plaintiff's work schedule to two days per week, and, on September 29, 2015, Plaintiff and Louis V. Greco III, on behalf of SDS, entered into the "2015 Agreement."  *Id.* at ¶¶ 29-31; Ex. B ("2015 Agreement") to the Declaration of Jessica Tischler ("Tischler Decl."), Dkt. Entry No. 37.

The 2015 Agreement provided that Plaintiff would receive $1,169.23 per week for working two days, and an additional $2,759.85 per week in previously deferred compensation.  FAC at ¶ 32.  Any additional days worked would be deducted from the deferred payroll.  *Id.*  The 2015 Agreement further provided that Plaintiff would "retain all rights and privileges as [a] full-time employee[]" (*Id.* at ¶ 33 (quoting 2015 Agreement)), "receive family medical coverage with the

---

[3]     Plaintiff does not allege which entity was paying him during this period, but SDS did not exist prior to early 2011.  FAC at ¶ 11.

company responsible for the employee portion" (2015 Agreement), and "[p]arking and other employee benefits will remain in place until either party terminate[d]" the Agreement (*Id.*). Additionally, the 2015 Agreement states that "[d]eferred payroll will continue to be paid . . . until the full balance and any associated interest on the deferred payroll is completely paid out." FAC at ¶ 34 (quoting 2015 Agreement). From September 2015 through his resignation in April 2016, Defendants paid Plaintiff approximately $3,923.08 per week. *Id.* at ¶ 35.

Upon Plaintiff's resignation, Defendants ceased paying Plaintiff's deferred compensation, which Plaintiff alleges totals more than $150,000. *Id.* at ¶¶ 36-37. Plaintiff additionally alleges that Defendants promised to repay $500 in educational expenses incurred for attending a class at Rutgers University and failed to pay for his phone and health insurance expenses. *Id.* at ¶¶ 40-42.

Plaintiff alleges that the Individual Defendants, as president, principal, officer, and/or owners of the Corporate Defendants, had the power to hire and fire employees, controlled employees' work schedules and conditions of employment, and determined the rate and method of employees' payment. *Id.* at ¶¶ 46-54. The Individual Defendants also "dominated the day-to-day operating decisions of [the] Corporate Defendants." *Id.* at ¶¶ 47, 50, 53. Plaintiff further alleges that the Corporate Defendants are "a single integrated enterprise under New York Labor Law that employed and/or jointly employed Plaintiff" and shared "a common business purpose, ownership, corporate officers, offices, and maintain common control, oversight and direction over the work performed by Plaintiff." *Id.* at ¶¶ 55-56. Plaintiff's responsibilities were the same whether he was working for SDS or Second Development, and he alleges that, at the time of the 2015 Agreement, Defendants understood that he would continue to work for both Corporate Defendants under the terms of the 2015 Agreement. *Id.* at ¶¶ 58-59.

On June 2, 2017, Defendants moved to dismiss the first cause of action for breach of contract against the Corporate Defendants for failure to join necessary parties and failure to state a claim. *See generally*, Defs.' Mem. Specifically, Defendants contend that the Court should dismiss the first cause of action in its entirety because RSL and RJM, who are both citizens of New York and whose joinder would destroy diversity, are necessary parties. *Id.* at 9-12. Defendants contend that Plaintiff has failed to state a claim against Second Development because: (1) Second Development is not a signatory to the 2015 Agreement, and Plaintiff has not alleged that it is the alter ego of signatory SDS; (2) the 2008 Agreement between Plaintiff and Second Development is too indefinite to be enforceable; and (3) Plaintiff has failed to allege the satisfaction of the condition precedent in the 2008 Agreement that Second Development "had the money" to resume paying Plaintiff his full salary. *Id.* at 5-7. Defendants additionally contend that the statute of frauds bars enforcement of the 2008 Agreement against SDS because a promise to pay Second Development's debt is void unless it is in writing. *Id.* at 7-8.

In opposition, Plaintiff argues that the Court again should reject Defendant's renewed nonjoinder arguments because neither RSL nor RJM were involved with or benefited from the 2008 Agreement. Opp'n at 20-25. Plaintiff additionally argues that: (1) the 2008 Agreement is sufficiently definite; (2) plaintiffs need not plead the satisfaction of a condition precedent, and, in any event, any condition here was met or waived; (3) Second Development is liable for the 2008 Agreement and the 2015 Agreement because Second Development manifested an intent to be bound by the terms of those agreements; and (4) since Second Development intended to be bound by the 2008 Agreement, the statute of frauds is inapplicable. *Id.* at 4-20. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

# DISCUSSION

## I.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (citations and internal quotation marks omitted).  The plausibility standard "does not require 'detailed factual allegations,' but it demands more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). *Iqbal* requires more than "'a formulaic recitation of the elements of a cause of action.'" *Id.* at 681 (quoting Twombly, 550 U.S. at 555).  Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  On a motion to dismiss, the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).  Courts may only consider the complaint itself, documents attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession, or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).

Failure to join a necessary party is a defense.  *See* Fed. R. Civ. P. 12(b)(7).  Rule 19 of the FRCP states that a party is necessary where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring

> double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a); *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  When a necessary party has not been joined, "the court must order that person be made a party."  Fed. R. Civ. P. 19(a)(2).

However, "a diversity-destroying party joined after the action is underway may catalyze loss of jurisdiction."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (citation omitted); *See also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108 (1968) (noting that joinder of a non-diverse defendant under Rule 19(a) destroys jurisdiction).  In general, courts prefer to avoid dismissing an action on joinder grounds.  Therefore, "'very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.'"  *Am. Home Assurance Co. v. Babcock & Wilcox Co.*, 2007 WL 4299847, at *2 (E.D.N.Y. Dec. 6, 2007) (quoting *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987)).

If a party is necessary, the court must next determine whether the party is "indispensable." *Viacom*, 212 F.3d at 725.  In determining if a party is indispensable, the court should consider:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.* (quoting Fed. R. Civ. P. 19(b)).  If a party is indispensable, and the court cannot feasibly join the indispensable party, the court must dismiss the action.  *Id.* (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 681-82 (2d Cir. 1996)).

## II.    Analysis

### A.  RSL and RJM Are Not Necessary Parties

Defendants previously argued unsuccessfully that RSL and RJM are necessary parties.  *See* Defs.' Mem. at 9 n.4 ("[T]his court previously rejected Defendants' argument that Plaintiff's consulting companies were necessary parties."); *Roldan*, 2017 U.S. Dist. LEXIS 29135, at *15 ("Defendants have failed to show that RSL and RJM are 'necessary parties.'").  Defendants now contend that, since the FAC alleges breaches of the 2008 Agreement, the Court must determine whether RSL and RJM are necessary parties to that agreement.  Defs.' Mem. at 9 n.4.  Defendant argues that RSL and RJM are necessary parties because the "portion payable pursuant to the 2008 Oral Agreement, was payable to RJM and/or RSL as consulting fees."  *Id.* at 11.  Defendants again argue that failing to join the consulting firms "could expose Defendants to 'substantial risk of incurring double, multiple, or otherwise inconsistent obligations' should RSL or RJM claim an interest in a portion of the monies sought by Plaintiff."  *Id.* (quoting *Spiro v. Parker Bros.*, 1992 U.S. Dist. LEXIS 11500, at *3 (S.D.N.Y. Aug. 4, 1992)).  Defendants do not contend that either RSL or RJM were parties to the 2008 Agreement.

A party is only necessary if "the substantial risk of inconsistent obligations [is] *caused by* the nonparty's absence in the case."  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 388 (2d Cir. 2006) (emphasis original); *Roldan*, 2017 U.S. Dist. LEXIS 29135, at *11-12.  "Where the 'risk of multiple obligations to different parties' was the result of the defendant's own pre-suit entry into two competing agreements, rather than the result of the non-party's absence from the lawsuit, that non-party [is] not [ ] necessary."  *Roldan*, 2017 U.S. Dist. LEXIS 29135, at *12.

In November 2008, when Second Development and Plaintiff entered into the 2008 Agreement, Defendants appear to have had a competing agreement with RJM.  The FAC alleges

that Louis V. Greco, Jr. hired Plaintiff in 2008 "to work for Second Development."  FAC at ¶ 10.

Around the same time, Second Development also entered into a consulting agreement with RJM

for Plaintiff's services.  Ex. C to Tischler Decl.[4]  Indeed, the Greco Affidavit references the

agreements between Second Development and RJM, RSL, and Plaintiff as separate and distinct

arrangements:  "In order to reach the $152,000 salary Plaintiff alleges he was owed, Plaintiff has

combined not only the salary which was paid to him, but also the consulting fees paid to RSL and

RJM."  Greco Aff. at ¶ 6.  Therefore, the risk of multiple obligations is caused by Defendants' pre-

suit entry into two competing agreements with Plaintiff and RJM, rather than by RSL and RJM's

absence, making RSL and RJM unnecessary parties.  *See Roldan*, 2017 U.S. Dist. LEXIS, at *12

(citing *MasterCard*, 471 F.3d at 388).

Defendants also have included in their motion papers correspondence that purports to show

that RSL and RJM have an interest in Plaintiff's deferred compensation.[5]  The correspondence

includes: (1) a November 26, 2008 email between Plaintiff and his wife that states that "the

financial situation for the company [Plaintiff] is consulting for is dire" (*See* Ex. D to Tischler

Decl.); (2) a July 23, 2008 email between Plaintiff and his wife, commenting that, "we have to

report income as self-employed income as you are a principal [of RJM]" (*See* Ex. E to Tischler

Decl.); and (3) a February 19, 2015 email from Plaintiff to Louis and Linda Greco that states, "I

highlighted what's due RSL for the deferred comp" (*See* Ex. F to Tischler Decl.).  Plaintiff argues

that none of these documents demonstrate that RSJ or RJM are necessary parties.  Opp'n at 22-25.

---

[4]     Second Development later contracted with RSL beginning in 2009.  *See* Affidavit of Louis V. Greco, Jr. ("Greco Aff."), Dkt. Entry No. 23, at ¶ 4.

[5]     "In ruling on a motion to dismiss under Rule 12(b)(7), the court 'may consider matters outside the pleadings.'"  *Mazzio v. Kane*, 2014 WL 2866040, at *3 (E.D.N.Y. June 24, 2014) (quoting *Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002)).

The Court is not convinced that these communications demonstrate that RSL and RJM have an interest in the deferred compensation. As Plaintiff points out, the November 26, 2008 email seems to support that Plaintiff's relationship with the Corporate Defendants was independent of the Corporate Defendants' relationship with RSL and RJM. The email does not mention the consulting firms, originated from Plaintiff's Second Development email address, and clearly references Second Development as the firm Plaintiff "is consulting for." *Compare* Ex. D to Tischler Decl. (noting that the firm he is consulting for is paying him $1,000 per week and deferring some of his compensation "until things change with the business") *with* FAC at ¶ 22 (alleging Defendants paid Plaintiff $1,000 per week in November 2008). The July 23, 2008 email similarly does not support Defendants' argument. It simply acknowledges that Plaintiff is a principal of RJM and discusses how he should report his income for tax purposes. *See* Ex. E to Tischler Decl. Finally, while the February 19, 2015 email states that the deferred compensation is "due" to RSL (*See* Ex. F to Tischler Decl.), the Court is not persuaded that this warrants the conclusion that RSL is a necessary party. Second Development had no contractual relationship with RSL—and did not exist—at the time of the 2008 Agreement, and Plaintiff, RSL, and RJM had independent agreements with the Corporate Defendants. *See* Greco Aff. at ¶ 6 ("In order to reach the $152,000 salary Plaintiff alleges he was owed, Plaintiff has combined not only the salary which was paid to him, but also the consulting fees paid to RSL and RJM.").

Since the Court finds that RSL and RJM are not necessary parties, the Court need not address whether they are indispensable. *Viacom*, 212 F.3d at 724 (citation omitted) ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)."). Accordingly, Defendants' motion to dismiss the breach of contract claim pursuant to Rule 12(b)(7) is denied.

### B. Breach of Contract Claims

Under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (citation omitted). A contract is only enforceable if it is "'sufficiently definite[,] to assure that the parties are truly in agreement with respect to all material terms.'" *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999)). However, "'[a] contract is not necessarily lacking in all effect merely because it expresses the idea that something is left to future agreement.'" *Id.* (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989), *cert. denied*, 498 U.S. 816 (1990)).

Generally, "oral agreements are binding and enforceable absent a clear expression of the parties' intent to be bound only by a writing." *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 109 (2d Cir. 2003). In evaluating the parties' intent to be bound, courts also consider: (1) if there has been "partial performance" of the contract; (2) a "complete negotiation of all terms"; and (3) "whether the subject matter of the contract is one that normally requires a written agreement." *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp.2d 175, 179 (S.D.N.Y. 2017) (citing *R.G. Grp., Inc. v. Horn & Hadart Co.*, 751 F.2d 69, 75-76 (2d Cir. 1984)).

New York law disfavors contractual conditions precedent to performance. *Sing. Recycle Centre Pte Ltd. v. Kad Int'l Mktg., Inc.*, 2009 WL 2424333, at *9 (E.D.N.Y. Aug. 6, 2009) (alteration original) (quoting *Ginnett v. Computer Task Grp.*, 962 F.2d 1085, 1099-1100 (2d Cir. 1992)) ("[C]onditions [precedent] are not favored under New York law, and in the absence of unambiguous language, a condition will not be read into the agreement."). When a contract

purports to include a condition precedent, courts in this Circuit are split as to whether a plaintiff must plead the occurrence or performance of the condition precedent. *See DiCroce v. Wells Fargo Bank, N.A.*, 2014 WL 4904458, at *6 (E.D.N.Y. Sept. 30, 2014) ("[I]t is unclear whether Plaintiff needs to plead performance or occurrence of conditions precedent at all."); *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp.2d 639, 648 (E.D.N.Y. 2012) ("[C]ourts in this Circuit have been inconsistent with regard to whether a claimant must plead performance or occurrence of conditions precedent."); *Cf. Caren v. Collins*, 696 F. App'x 19, 21 (2d Cir. 2017) (summary order) (affirming dismissal of contract claim, under Pennsylvania law, for failure to "plead adequately the[] performance of a condition precedent").

### 1. 2008 Agreement

Defendant contends that the FAC fails to state a claim against Second Development for breach of the 2008 Agreement because: (1) the 2008 Agreement is too indefinite to be enforceable, and (2) Plaintiff has failed to plead the satisfaction of the condition precedent that Second Development "had the money" to repay Plaintiff. Defs.' Mem. at 5-7. Defendant also contends that the FAC fails to state a claim against SDS for breach of the 2008 Agreement because the statute of frauds bars enforcement of the 2008 Agreement against SDS. *Id.* at 7-8. In opposition, Plaintiff argues that: (1) there is no requirement to plead satisfaction of a condition precedent, and the condition precedent was waived or met in any event; (2) the 2008 Agreement terms are sufficiently definite; and (3) the statute of frauds does not bar enforcement of the 2008 Agreement against SDS because SDS intended to be bound by the 2008 Agreement. Opp'n at 5-14, 19-20.

### a. Definiteness of Terms

"'[T]he concept of definiteness cannot be reduced to a precise, universal measurement.'" *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, 2010 WL 1257326, at *4 (S.D.N.Y. Mar.

12, 2010) (quoting *Cobble Hill*, 74 N.Y.2d at 482).  Courts that are too eager to require definiteness in enforcing an agreement risk "'defeat[ing] the reasonable expectations of the parties in entering into the contract.'"  *Id.* (quoting *Cobble Hill*, 74 N.Y.2d at 483).  A price or salary term in a contract is sufficiently definite "if the amount can be determined objectively without the need for new expressions by the parties" and where "a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage." *Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 98 F.3d 36, 40 (2d Cir. 1996) (internal quotation marks omitted) (quoting *Cobble Hill*, 74 N.Y.2d at 483). A contract may be silent as to the time for performance, in which case "New York law implies a reasonable time period." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (citation omitted).

Here, the terms of the 2008 Agreement are sufficiently definite.  Plaintiff alleges that, under the 2008 Agreement, Second Development agreed to "pay him a portion of his salary, and defer the payment of the difference to a time when [Second Development] had the money."  FAC at ¶ 21.  Therefore, the salary term is readily determinable by the difference between the amount paid and Plaintiff's salary.  While the 2008 Agreement does not establish a time for repayment, that is not fatal to its enforcement.  New York law permits performance within a reasonable time, and neither party contends that there was an unreasonable delay in performance.  Moreover, Second Development began repaying the deferred compensation in March 2015, prior to entering into the 2015 Agreement, which suggests that an agreement existed.  *See, e.g.*, *Kimm v. Kyu Sung Cho*, 706 F. App'x 1, *2 (2d Cir. 2017) (summary order) (citing *R.G. Grp., Inc.*, 751 F.2d at 75-76 ("[P]artial performance is an unmistakable signal that one party believes there is a contract.")) ("Partial performance by one party and the acceptance of such performance by another can [demonstrate an intent to be bound].")); *NYKCool A.B. v. Pac. Fruit, Inc.*, 2013 WL 163621, at *2

14

(2d Cir. 2013) (unpublished) (citing *R.G. Grp., Inc.*, 751 F.2d at 75-76) ("[T]he parties' substantial partial performance on the contract weighs strongly in favor of contract formation."). Accordingly, the 2008 Agreement is sufficiently definite to be enforceable.

### b. Conditions Precedent

Setting aside whether there is a requirement to plead a condition precedent, the Court must first determine whether the 2008 Agreement contains a condition precedent. While "talismanic words are not required, the law nevertheless requires that conditions precedent be expressed in unmistakable language." *Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (citation and internal quotation marks omitted). Nor may a party "complain of the nonoccurrence of a condition precedent when he was responsible for the fulfillment of the condition precedent." *B2X Corp. v. Classic Closeouts, LLC*, 2010 WL 2230198, at *3 (S.D.N.Y. May 26, 2010). A party whom a condition precedent benefits may waive such a condition. *See Liani v. Baker*, 2010 WL 2653392, at *3 (E.D.N.Y. June 28, 2010) (citing *Walter E. Heller & Co., Inc. v. Am. Flyers Airline Corp.*, 459 F.2d 896, 901 (2d Cir. 1972) ("[I]t is hornbook law that a condition precedent in favor of one of the parties may be waived by that party.")).

Here, Defendant contends that Second Development's promise to pay Plaintiff's deferred compensation at "a time when [it] had the money" constitutes a condition precedent to performance. Defs.' Mem. at 5-6. This language, while not a direct quote of the 2008 Agreement, which was oral, does not contain any of the hallmark statements that typically evidence a condition precedent. *See, e.g.*, *Bank of N.Y. Mellon*, 821 F.3d at 305 (citation omitted) ("Nor does [the agreement] employ any recognized 'linguistic conventions' of condition—such as, 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to'—to make plain that

[defendant's] remedy obligations do not arise until [a condition is satisfied].") Given the ambiguity of the oral agreement, the Court declines to construe the contract to include a condition precedent. *Sing. Recycle Centre*, 2009 WL 2424333, at *9 (citation and internal quotation marks omitted) ("[I]n the absence of unambiguous language, a condition [precedent] will not be read into the agreement.").

Even if the Court construed the 2008 Agreement to contain a condition precedent, Second Development's conduct suggests that the condition was either met or waived. Accepting Plaintiff's allegations as true, in March 2015, Second Development "started paying Plaintiff an additional $1,000.00 per week to start paying back past deferred payments." FAC at ¶ 27. Therefore, Second Development either: (1) "had the money," or (2) waived that as a requirement for repayment. Accordingly, Defendants' claim that Plaintiff failed to plead the occurrence of a condition precedent is without merit.

### c. Statute of Frauds

Defendant contends that the 2008 Agreement is unenforceable against SDS because the statute of frauds requires that SDS's assumption of Second Development's debt be in writing. Defs.' Mem. at 7-8. Plaintiff contends that the statute of frauds does not apply because SDS manifested an intent to be bound by the 2008 Agreement, and, therefore, did not assume Second Development's debt. Opp'n at 19.

Under New York law, the statute of frauds requires that a "promise to answer for the debt, default or miscarriage of another" person must be in writing. N.Y. Gen. Oblig. Law § 5-701(a)(2); *Philippou v. Cougentakis*, 2009 WL 1097542, at *9 (E.D.N.Y. Apr. 21, 2009). Logically, therefore, no writing is required if the promise is to pay one's own debt. *Aries Ventures Ltd. v. Axa Fin. S.A.*, 729 F. Supp. 289, 294 n.6 (S.D.N.Y. 1990).

Non-signatories to a contract may be bound to the terms of an agreement if the "non-signatory is found to have manifested an intent to be bound by the contract." *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp.2d 380, 396 (S.D.N.Y. 2009) (citing *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 239 A.D.2d 171, 172 (1997)).   A court can infer a non-signatory's intent to be bound by the existence of an alter ego relationship between a signatory and the non-signatory. *Id.* at 396-97 (citing *Horsehead*, 239 A.D.2d at 172; *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 946 (S.D.N.Y. 1994)).   A court also will infer an intent to be bound in the absence of alter ego allegations where the non-signatory "is in privity with the plaintiff or has assumed the obligations of the contract." *Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. Alliance, Inc.*, 2007 WL 1701813, at *5 (S.D.N.Y. June 12, 2007) (citation and internal quotation marks omitted).   Such an inference is based on "the totality of [a party's] expressed words and deeds." *MBIA*, 706 F. Supp.2d at 397. For example, courts have found that a non-signatory assumed the obligations of an agreement where the non-signatory: (1) participated in the negotiation of the contract; (2) micromanaged performance under the contract; (3) acknowledged it was the real party in interest; and (4) made payments on behalf of the signatory. *See e.g.*, *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 WL 4461769, at *5 (S.D.N.Y. July 21, 2015); *Impulse*, 2007 WL 1701813, at *8-9.

Here, Plaintiff expressly advances a theory other than alter ego.[6]  *See* Opp'n at 15 ("Plaintiff . . . state[s] a claim against Second Development . . . under a theory other than the alter ego theory.").   Plaintiff contends that SDS's intent to be bound is evidenced by its: (1) micromanaging performance under the contract; (2) making payments on behalf of Second Development; (3) being intimately involved with and benefiting from the contract; (4) agreeing to

---

[6]      The Court previously granted Plaintiff leave to amend his complaint to amplify the allegations that SDS and Second Development failed to observe corporate formalities.  Plaintiff declined to add any such allegations.

the contract; and (5) having its executives review and approve the contract. *Id.* at 17-19 (citing *TransformaCon*, 2015 WL 4461769, at *1, 5; *Impulse*, 2007 WL 1701813, at *2).

Before analyzing SDS's actions, it is important to understand the nature of the 2008 Agreement to which SDS would be bound. Plaintiff alleges that, in 2008, three years prior to SDS even existing, Second Development promised to "pay [Plaintiff] a portion of his salary, and defer the payment of the difference to a time when [Second Development] had the money." FAC at ¶ 21. Thus, Second Development agreed to pay its own debt later. To the extent that SDS manifested an intent to be bound by the 2008 Agreement, it would be obligating itself to repay Second Development's debt.

Plaintiff's allegations with respect to SDS manifesting an intent to be bound are less than clear. While Plaintiff analogizes the instant matter to *Impulse Marketing* and *TransformaCon* (Opp'n at 17-19 (citing *TransformaCon*, 2015 WL 4461769, at *5; *Impulse*, 2007 WL 1701813, at *2)), the facts here are of a decidedly different nature. SDS has not acknowledged that it was the real party in interest under the 2008 Agreement; it did not participate in negotiating the 2008 Agreement; and it could not have "micromanaged" performance under the agreement, at least not before its formation in 2011. Indeed, Plaintiff barely alleges *any* management by SDS of Plaintiff's work. *See, e.g.*, FAC at ¶¶ 16, 43-45, 65. Although Plaintiff alleges that Louis V. Greco, Jr. was an officer and owner of SDS (*Id.* at ¶¶ 46-47), he could not have been in that role when he and Plaintiff entered into the 2008 Agreement, since SDS did not exist at that time (*Id.* at ¶ 11 (alleging that SDS was formed in 2011)). Therefore, SDS's executives could not have "reviewed and approved various aspects of [the contract]." Opp'n at 19 (citing *TransformaCon*, 2015 WL 4461769, at *5). It also is difficult to see how SDS benefited from the 2008 Agreement, other than through Plaintiff's continued employment as a consultant, which Plaintiff alleges was

18

for both Corporate Defendants. FAC at ¶ 65 (alleging that after SDS's formation, Plaintiff continued to work for both entities).

Plaintiff does allege that, after SDS's creation, both Corporate Defendants paid him during the period in which when he received some of his deferred compensation. *Id.* at ¶ 27 ("[I]n March 2015, Defendants started paying Plaintiff . . . past deferred payments."). Importantly, Plaintiff was working for both Corporate Defendants at this time, and he does not allege which entity made the deferred payments. Nonetheless, Plaintiff's allegation that "[t]he agreement to pay all deferred payments was *adopted* by SDS" (*Id.* at ¶ 64 (emphasis added)) supports an inference that SDS assumed the obligation to repay the deferred compensation under the 2008 Agreement. *See, e.g.*, *Kimm*, 706 F. App'x at *2 (citing *R.G. Grp., Inc.*, 751 F.2d at 75-76) ("Partial performance by one party and the acceptance of such performance by another can [demonstrate an intent to be bound]."). However, under New York law, since the assumed obligation is to repay the debt of another (Second Development), that promise must be in writing. N.Y. Gen. Oblig. Law § 5-701(a)(2). Since there is no written agreement memorializing SDS's agreement to repay the compensation Second Development deferred, Plaintiff's breach of contract claim against SDS with respect to the 2008 Agreement is dismissed.

### 2. 2015 Agreement

Defendants contend that, since Second Development is not a signatory to the 2015 Agreement, and Plaintiff has not alleged an alter ego relationship between SDS and Second Development, Second Development cannot be liable for breaching the 2015 Agreement. Defs.' Mem. at 7. In opposition, Plaintiff argues that Second Development's liability stems from its manifestation of an intent to be bound by the 2015 Agreement, not its status as SDS's alter ego. Opp'n at 15-19 ("Plaintiff . . . state[s] a claim . . . under a theory other than the alter ego theory.").

19

Plaintiff then contends that Second Development, similar to SDS, manifested an intent to be bound by: (1) micromanaging performance under the contract; (2) making payments on behalf of SDS; (3) being intimately involved with and benefiting from the contract; (4) agreeing to the contract; and (5) having its executives review the contracts. *Id.* at 18-19. Crediting Plaintiff's allegations, and drawing all inferences in his favor, the Court concludes that Plaintiff's allegations are insufficient to withstand dismissal.

As an initial matter, the majority of Plaintiff's allegations refer to the Corporate Defendants indiscriminately, making it difficult to ascertain Second Development's intent. *See, e.g.*, FAC at ¶¶ 24, 27, 30). Plaintiff seemingly relies on allegations about the Individual Defendants' roles within and ownership of SDS and Second Development in reaching the conclusion that Second Development was intimately involved in and agreed to the 2015 Agreement. *Id.* at ¶¶ 46, 49, 52. However, Plaintiff does not suggest that the Court should disregard corporate formalities, and Plaintiff expressly does not argue that the Corporate Defendants are alter egos of each other. Opp'n at 15 (noting Plaintiff is pursuing a theory "other than the alter ego theory"). Absent allegations of alter ego, the Court declines to construe SDS and Second Development as anything but distinct entities, even though they are alleged to share ownership and executives.

Plaintiff also does not allege that Second Development acted on SDS's behalf. Instead, Plaintiff alleges that the Corporate Defendants "jointly employed Plaintiff during the relevant period" and were "a single integrated enterprise under New York Labor Law."[7] *Id.* at ¶ 55. Plaintiff further alleges that his responsibilities were the same when working for both Corporate Defendants. Opp'n at 18 (citing FAC at ¶¶ 13-16). However, Plaintiff does not explain how the

---

[7] As the magistrate judge previously pointed out, the analysis for determining whether two entities are a single employer under the NYLL is different than determining whether two entities are alter egos in the context of a breach of contract claim. *See Roldan*, 2017 U.S. Dist. LEXIS 29135, at *19-20.

fact that he was working for Second Development when he and SDS entered into the 2015 Agreement equates to Second Development micromanaging his performance under the 2015 Agreement.  Indeed, Plaintiff only conclusorily alleges that Second Development was involved at all in Plaintiff's performance under the contract.  *E.g.*, Opp'n at 18; FAC at ¶ 16 (alleging that Plaintiff's responsibilities were the same no matter what entity he worked for).

Plaintiff further alleges that the Defendants understood that the 2015 Agreement established the terms of his continued employment and repayment of deferred compensation.  *See* FAC at ¶¶ 58-59 ("[A]t the time the September 2015 Agreement was entered into, Defendants understood that Plaintiff had been and would continue to furnish labor to all Defendants . . . [and] that the September 2015 Agreement was intended to set the terms and conditions of Plaintiff's employment with all Defendants."); *Id.* at ¶ 65 ("Plaintiff continued to be paid under the same deferred payment arrangement regardless of whether the work was performed under SDS or Second Development Services, Inc."); *Id.* at ¶ 66 ("Plaintiff entered into the September 2015 Agreement with [the] Corporate Defendants governing the terms and conditions of Plaintiff's employment with [the] Corporate Defendants.").  These conclusory allegations are merely consistent with Plaintiff's alleged joint employment relationship with the Corporate Defendants. They do not demonstrate that Second Development manifested an intent to be bound by the 2015 Agreement.

Nor is the Court persuaded by Plaintiff's continued reliance on *Impulse Marketing* and *TransformaCon.  See* Opp'n at 18-19.  Unlike in *Impulse Marketing*, Second Development has not acknowledged that it was the real party in interest under the 2015 Agreement.  *Impulse*, 2007 WL 1701813, at *2 (entity "micro-managed" performance and informed signatory it was "the real party interest" under the contract).  Nor does Plaintiff allege that Second Development and SDS shared

a parent-subsidiary relationship, as was present in *TransformaCon*. *See TransformaCon*, 2015 WL 4461769, at *5 (emphasis added) ("[T]he presentation further supports the conclusion that non-signatory *Vista* intended to be bound because Vista executives attended the presentation and *because Vista is the parent corporation*.").

As discussed above, Plaintiff alleges that Second Development and SDS both paid him during the period in which he received some of his deferred compensation.  FAC at ¶ 27 ("Defendants started paying Plaintiff . . . past deferred payments.").  While an allegation that Second Development paid the deferred compensation owed under the 2015 Agreement would create an inference of an intent to be bound, *See Impulse*, 2007 WL 1701813, at *6 (payment on behalf of signatory evidence of "acting under the obligation of a contract"), these payments were made prior to the 2015 Agreement (FAC at ¶¶ 27-28 (alleging that deferred payments began in March and ended in August of 2015)).  Thus, they cannot evidence Second Development's intent to be bound by a yet-to-be-made agreement.  Based on the "the totality of [Second Development's] expressed words and deeds," *MBIA*, 706 F. Supp.2d at 397, Plaintiff has failed to allege adequately that Second Development intended to be bound by the 2015 Agreement.  Accordingly, Plaintiff's breach of contract claim against Second Development with respect to the 2015 Agreement is dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion under Rule 12(b)(7) is denied since neither RSL nor RJM are necessary parties.  Defendants' motion under Rule 12(b)(6) is granted and the breach of contract claims against SDS, with respect to the 2008 Agreement, and against Second Development, with respect to the 2015 Agreement, are dismissed.  The breach of contract claims against Second Development, with respect to the 2008 Agreement, and against SDS, with respect to the 2015 Agreement, and the NYLL wage claim against Defendants remain.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2018

_____ /s/ _____
DORA L. IRIZARRY
Chief Judge
